IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOHN L. GILLIS,        ) | Civil Action No. 3:11-1801-JRM |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.        ) | |
| ) | **ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER    ) | |
| OF  SOCIAL SECURITY        ) | |
| ) | |
| Defendant.    ) | |
| ) | |

Plaintiff, John L. Gillis, filed this action on July 26, 2011.  By Order of Reference (Doc. 17) from the Honorable Terry L. Wooten, United States District Judge, pursuant to 28 U.S.C. § 636, Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, and the consent of the parties, the case is before the undersigned Magistrate Judge for a final order.   Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

## **ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for DIB on October 29, 2008.  He alleges disability as of October 29, 2008.  See Tr. 35.[1]    After his claim was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on August 11, 2010, at which Plaintiff appeared and testified.  On September 23, 2010, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the

---

[1]Plaintiff originally alleged an onset date of July 4, 2008, but later amended it to October 29, 2008.  See Tr. 10, 35, 115-116.



testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff can perform.

Plaintiff was fifty-three years old at the time of the ALJ's decision. He has a high school education with past relevant work as a welder. Tr. 18, 54-55. Plaintiff alleges disability due to degenerative disc disease and generalized anxiety disorder. See Tr. 12.

The ALJ found (Tr. 12-19):

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.   The claimant has not engaged in substantial gainful activity since July 4, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.   The claimant has the following severe impairments: degenerative disc disease and generalized anxiety disorder (20 CFR 404.1520(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift, carry and handle 20 pounds occasionally and 10 pounds frequently; occasional stooping, twisting, crouching, kneeling or crawling; no climbing of ropes or scaffolds and only occasional climbing of ladders. Further, the claimant is restricted to the performance of unskilled to low semi-skilled [work] with only occasional interaction with [the] public.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on February 6, 1957, and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

2



9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 4, 2008, through the date of this decision (20 CFR 404.1520(g)).

The Appeals Council denied the request for review in a decision issued June 2, 2011 (Tr. 1-5), and the ALJ's decision became the final decision of the Commissioner.

## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL EVIDENCE

Plaintiff has a long history of degenerative disc disease, as well as anxiety. See, e.g., Tr. 216. Lumbar spine x-rays as early as May 16, 2005, revealed degenerative disc disease and facet joint changes at L4-5 and L5-S1. Tr. 299. Plaintiff underwent chiropractic treatment in March 2006. Tr. 176-178. A lumbar MRI on April 5, 2006, showed diffuse annular bulges at L5-S1 and L4-5 with



facet arthritis and extension of osteophytes causing bilateral neuroforaminal narrowing at the L5-S1 level, but no central canal stenosis. Tr. 309, 378. Moore Orthopaedic Clinic records show that in April and May 2006, Plaintiff underwent a series of epidural steroid injections and was also prescribed Vicodin, Ultram, and Percocet for back pain. Tr. 303-308, 314.

After Plaintiff complained of severe lower back pain on February 8, 2008, Dr. Roy Smith (a family practitioner) ordered an MRI and referred Plaintiff to a pain management clinic. Tr. 217-218. The MRI demonstrated small disc protrusions and mild facet joint changes at L4-5 and L5-S1, but no evidence of spinal stenosis. Tr. 228. On February 20, 2008, Dr. Hugh Thompson, an anesthesiologist and pain management specialist, administered a sacroilliac injection. Tr. 227.

After Plaintiff failed to respond to the sacroiliac injection, Dr. Smith referred Plaintiff to the Providence Physical Medical Center for an initial evaluation by a spine and rehabilitation specialist. On March 28, 2008, Plaintiff reported to Dr. Usama Gabr that physical therapy had not provided relief for his low pain, and that his pain medication was causing nausea and vomiting. Dr. Gabr noted that Plaintiff's lumbar spine was tender to palpation and his lumbar flexion was mildly restricted, but he had normal gait and station, full strength, and normal sensation. Faber (flexion abduction external rotation) sign[2] was negative on the right and positive on the left side. He restricted Plaintiff's activities of carrying, lifting, squatting, standing, stooping, and bending for two months, and opined that Plaintiff was temporarily disabled pending completion of a course of therapy. Tr. 359-361.

---

[2]Fabere or Faber sign or test, also known as Patrick's test, is a test done while the patient is supine. "The thigh and knee are flexed and the external malleolus is placed over the patella of the opposite leg; the knee is depressed, and if pain is produced, arthritis of the hip is indicated." Dorland's Illustrated Medical Dictionary, 1711, 1896 (32nd ed. 2012).



Plaintiff returned to Dr. Gabr on April 8, 2008, complaining of increased back pain following a fall. Dr. Gabr noted that Plaintiff's lumbar spine was tender to palpation, his lumbar flexion was mildly restricted, and he had positive Faber signs bilaterally, but Plaintiff had normal gait and station, full strength, and normal sensation. Tr. 350-352. A CT scan demonstrated minimal disc bulging without herniation at L1-2 through L3-4, and greater degenerative changes at L4-5 and L5-S1 with some narrowing of the neural foramen. Tr. 204-205. On April 14, 2008, Plaintiff returned to Dr. Gabr reporting improved symptoms. On examination, Plaintiff's spine was not tender; he had negative Faber signs; and he had a painless full range of motion of his spine, full strength, and intact sensation. Tr. 345-346.

On July 3, 2008, Plaintiff fell after stepping in a hole in his yard, resulting in an ankle injury. Tr. 210, 223-224. Dr. James Nichols diagnosed a fracture of Plaintiff's lateral malleolus and prescribed a CAM walker. Tr. 210. By September 23, 2008, Plaintiff was able to walk in an athletic shoe. X-rays showed the malleolar fracture had healed, although he still had degenerative changes in the mid tarsal and interphalangeal joints. Dr. Nichols gave Plaintiff a note indicating that he could return to work on October 6, 2008. Tr. 208.

On September 29, 2008, Plaintiff told Dr. Smith that his ankle felt better and his back was doing "ok." Tr. 225. Dr. Smith discontinued Plaintiff's Vicodin prescription. Tr. 226.

On October 9, 2008, Plaintiff returned to Dr. Gabr complaining of low back pain and calf tingling, weakness, and numbness. On examination, Plaintiff had an antalgic gait, tenderness in his low back, mildly restricted low back range of motion, full strength, and intact sensation. Dr. Gabr prescribed Vicodin and Lyrica and opined that it would be a significant challenge for Plaintiff to return to his job as a welder. Tr. 336-337. On October 29, 2008, Dr. Gabr administered a lumbar

5



steroid injection. Tr. 331.  On November 24, 2008, Plaintiff reported low back pain and numbness. Dr. Gabr noted that Plaintiff had intact sensation, restricted lower back range of motion, limited motion in extension and flexion of his spine, and negative Faber signs.  He  refilled Plaintiff's Vicodin prescription, and administered another lumbar spine injection. Tr. 386-387.

On February 4, 2009, Dr. Mitchell Hegquist examined Plaintiff at the request of the state agency.  Plaintiff's primary complaint was low back pain that occasionally radiated into his lower left extremity.  Plaintiff alleged that he had experienced back problems since 1975. On examination, Plaintiff had good range of motion and strength in his extremities, no sensory or motor deficits, a normal gait, and the ability to squat fully with some difficulty.  It was noted that Plaintiff had no tenderness to his spine, was able to flex and extend his back fully, and had a negative straight-leg raise testing. Tr. 230-233.

A couple of weeks later, Dr. James Weston, a state agency physician, reviewed Plaintiff's records and completed a Physical Residual Functional Capacity Assessment in which he opined that Plaintiff could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  Tr. 235.  On February 23, 2009, Dr. Edward Waller,  a state agency psychologist,  reviewed Plaintiff's records and opined that Plaintiff's anxiety disorder was not severe and only caused mild degrees of limitation.  Tr. 242-255.

On June 3, 2009, Plaintiff returned to Dr. Gabr, continuing to complain of low back pain. Plaintiff had a restricted low back range of motion.  Faber sign was positive on the left and negative on the right.   Dr. Gabr administered trigger point injections. Tr. 384-385.



On June 30, 2009, Dr. Gabr completed a form regarding Plaintiff's work-related abilities. He opined that Plaintiff could lift less than ten pounds frequently; stand and walk less than two hours per day; must periodically alternate between sitting and standing; was limited in using his legs; could never climb, kneel, crouch, or crawl; was limited to occasional reaching; and needed to avoid temperature extremes, vibrations, and humidity/wetness. Tr. 259-261.

On September 14, 2009, Plaintiff returned to Dr. Smith for a refill of his medications, and stated he had been out of them for a long time. Plaintiff reported that his world was "falling apart," and his panic attacks were getting worse. Dr. Smith noted Plaintiff's mood and affect were anxious, and Plaintiff was "choked up, almost tearful at times." He prescribed Celexa for Plaintiff's mood and Ativan for anxiety. Tr. 265-266. On November 2, 2009, Dr. Smith completed a form in which he opined that Plaintiff had "obvious" work-related limitations due to his depression and anxiety, although he did not detail what those limitations were. Tr. 264.

Dr. Nicholas DePace conducted a mental status evaluation at the request of the state agency on December 1, 2009. Plaintiff reported a history of "pretty serious panic attacks" occurring for the past three to four years. Plaintiff told Dr. DePace that he got together with friends every weekend, was able to perform all inside and outside chores, although he had to pace himself due to his physical problems, and was able to cook. On examination, Plaintiff described his mood as "okay," he was able to follow directions, and he appeared to be of average intelligence. Dr. DePace diagnosed probable longstanding generalized anxiety disorder and symptoms consistent with panic disorder. Tr. 269. Dr. DePace opined that Plaintiff could perform three-step commands with no problems. Tr. 267-270.



In December 2009, Dr. Warren Holland, a state agency physician, reviewed Plaintiff's records and opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk six hours in an eight- hour workday, and sit six hours in an eight-hour workday, except he had some postural limitations. Tr. 286-293.  On December 22, 2009, Dr. Lisa Klohn, a state agency psychologist, reviewed Plaintiff's records and opined that Plaintiff could perform simple unskilled work; attend work regularly, although he might miss an occasional day; make work-related decisions; and accept supervision and interact appropriately with co-workers, although he might not be suited to work with the general public. Tr. 294-296.

On February 12, 2010, Plaintiff reported to Dr. Smith that he was having difficulty sleeping due to worry and anxiety at night. Tr. 319.  On April 6, 2010, Plaintiff told Dr. Smith he felt best on Ativan alone (without an anti-depressant medication). Tr. 323.

On July 21, 2010, Dr. Gabr completed a form titled "Clinical Assessment of Pain." Tr. 324-325.  He opined that Plaintiff's pain would be distracting to the adequate performance of daily activities or work, physical activity would likely greatly increase pain, and Plaintiff's pain medications would have significant side effects. Tr. 324-325.

## HEARING TESTIMONY

At the hearing (August 2010), Plaintiff testified that he last worked in October 2008, and had been receiving unemployment benefits from October 2008 until about two weeks before the administrative hearing. Tr. 39.  He previously worked as a welder. Tr. 40. Plaintiff testified that he could not sit, stand, or walk for very long before he had pain in his back, which radiated down his left leg causing his leg to become numb, and sometimes caused him to fall. He stated that it was difficult for him to get up in the morning, and it was very difficult to put on his shoes. Tr. 43.



Plaintiff reported that he suffered from panic attacks for several years, had been on medicine for the attacks for ten years, and the attacks were debilitating without medication. Tr. 44. He stated that he did not like crowds and did not go out of the house much. Tr. 45. Plaintiff testified that he drove and occasionally went to the grocery store, but often did not leave his house for three or four days in a row. Tr. 33. Plaintiff testified that he took Vicodin and Percocet, but had not taken it the day of the hearing, and only took it on bad days and at night. Tr. 46. According to Plaintiff, he did not do any lifting. Tr. 49. Plaintiff stated that he had a back brace which he wore on occasion. He testified that Vicodin made him nauseous the day after he took it. Tr. 52. He testified that he used a riding lawn mower to mow his lawn, but could only use it for about an hour at a time. Tr. 51. Plaintiff further testified that he could cook, but could only stand to do so for thirty minutes at a time. Tr. 51.

## **DISCUSSION**

Plaintiff alleges that: (1) the ALJ's decision is not supported by substantial evidence and is not correct under controlling law; (2) the ALJ erred in evaluating his credibility; and (3) the ALJ erred in disregarding the opinion of his treating physician (Dr. Gabr). The Commissioner contends that the final decision that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence[3] and free of harmful legal error.

---

[3]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

9



Plaintiff alleges that the ALJ erred in evaluating the opinion of disability of his treating physician, Dr. Gabr.[4]  Specifically, he argues that the ALJ erred in relying on the February 2008 MRI, rather than the more recent (April 2008) CT scan, which showed signs of stenosis, in discounting Dr. Gabr's opinion.  He also argues that the ALJ improperly discounted Dr. Gabr's opinion based on Dr. Gabr's March 2008 opinion projecting that Plaintiff would be temporarily disabled for two months, as this opinion was rendered prior to Plaintiff's amended alleged disability onset date, was before he stopped working, and his condition deteriorated after the opinion was rendered.  Plaintiff also claims that the ALJ failed to support her theory that good strength, tone, and negative straight leg raise testing was inconsistent with Plaintiff's claims of disabling pain where the CT scan documented stenosis and disc disease and Plaintiff had other clinical abnormalities including severe restriction of motion, altered sensation, and an antalgic gait.  The Commissioner contends that the ALJ reasonably discounted Dr. Gabr's opinion because it was inconsistent with the February 2008 MRI which demonstrated only small protrusions and mild facet joint changes, with no evidence of spinal stenosis; it was inconsistent with Dr. Gabr's March 2008 opinion in which Dr. Gabr opined that Plaintiff could return to work two months later; and it was inconsistent with clinical findings

---

[4]Plaintiff also appears to argue that the ALJ erred in concluding that the ALJ's RFC assessment was consistent with Dr. Smith's November 2009 opinion.  Plaintiff's Brief at 14.  The ALJ's determination that Dr. Smith's mental status findings (which included that Plaintiff had adequate attention, concentration, and memory, but an anxious and depressed mood, and that Plaintiff had "obvious" work-related limitations - Tr. 264) were consistent with the RFC is supported by substantial evidence. Dr. Smith's limitations only concern Plaintiff's mental impairments. As noted by the parties, Dr. Smith did not specify the limitations, such that there is nothing inconsistent with the RFC found by the ALJ.  Although Plaintiff obtained medications from his family physician for his mental impairments, there is no evidence of any mental health hospitalization or ongoing treatment with a mental health specialist.  Additionally, in light of Plaintiff's mental impairments and his testimony that his panic attacks are triggered by crowds, the ALJ limited Plaintiff to unskilled or low semi-skilled work (instead of his skilled past relevant work) and only occasional interaction with the public.



including physical examinations which routinely showed good strength and tone, and negative straight raise testing (test for nerve root compression). The Commissioner appears to argue that the CT scan does not support Dr. Gabr's opinion because it only showed mild stenosis, and Dr. Gabr's opinion was based on the MRI findings rather than the CT findings. The Commissioner argues that the ALJ reasonably discounted Dr. Gabr's later opinion based on Dr. Gabr's earlier opinion, as the later opinion was more restrictive than the earlier opinion, there was no explanation for the change, and there was no apparent change in Plaintiff's condition.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p



provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to give little weight to Dr. Gabr's opinions[5] is not supported by substantial evidence. The ALJ discounted Dr. Gabr's June 30, 2009 statement (which included the restrictions that Plaintiff could lift less than ten pounds and could stand/walk less than two hours), at least in part, because Plaintiff's February 2008 MRI showed no spinal stenosis. Tr. 17. Dr. Gabr, however, wrote that he based his opinion concerning Plaintiff's exertional limitations (lifting/carrying and standing/walking) on Plaintiff's "significant lumbar spondylosis with back myofascial symptoms," not stenosis.[6] Tr. 259. Further, the April 2008 CT scan (which Dr. Gabr ordered after Plaintiff complained of increased back pain after a fall) did show at least some spinal stenosis. As noted above, the CT scan showed some narrowing of the neural foramen. Tr. 204-205.

Additionally, the ALJ's decision to discount Dr. Gabr's June 2009 opinion based on this physician's March 2008 statement does not appear to be supported by substantial evidence. Although the Commissioner states that Dr. Gabr opined in March 2008 that Plaintiff could return to work two months later, review of this medical record indicates that Dr. Gabr recommended activity restrictions for two months and stated that Plaintiff was temporarily disabled pending completion of

---

[5]The ALJ wrote that she gave little weight to Dr. Gabr's June 30, 2009 statement because she found that his opinion was not supported by the overall evidence which did not support the overall limitation noted by Dr. Gabr; the MRI showed degenerative changes, but no spinal stenosis; on March 28, 2008, Dr. Gabr estimated only temporary limitations of two months; and physical examinations showed good strength, tone, negative straight leg raising, and inconsistent Faber signs. Tr. 17.

[6]Spondylosis is defined as "degenerative spinal changes due to osteoarthritis." Dorland's at 1754. Stenosis is defined as "an abnormal narrowing of a duct or canal." Id. at 1769.



a course of physical therapy. Tr. 360-361. Less than two weeks after Dr. Gabr's March 2008 opinion, Plaintiff sought treatment from Dr. Gabr after falling and experienced increased back pain. The April 2008 CT scan appears to show at least some worsening of Plaintiff's condition.

Additionally, the ALJ did not address Dr. Gabr's July 2010 opinion that Plaintiff's pain would be distracting to the adequate performance of daily activities or work, physical activity would likely greatly increase his pain, and his pain medications would have significant side effects. Tr. 324-325. This action is remanded to the Commissioner to consider all of Dr. Gabr's opinions in light of all of the evidence of record.

Plaintiff also alleges that the ALJ erred in discounting his credibility. Specifically, he argues that the ALJ inaccurately summarized his testimony regarding his pain and limitations; inaccurately commented about his use of medications and receipt of unemployment benefits; made no evaluation of his medication side effects including nausea and drowsiness; did not reference the clinical abnormalities noted by his treating physicians (including diminished patellar reflexes, recurrent spasms, marked tenderness in the paraspinal muscles, limited range of motion, and positive Faber signs); failed to evaluate his history of receiving repeated lumbar and trigger point injections; and made no reference to his use of a back brace, his obvious discomfort during the hearing, the observation of an agency employee that he "seemed uncomfortable sitting" during an interview, and his excellent thirty-three year work history. The Commissioner contends that the ALJ reasonably discounted Plaintiff's subjective complaints. Specifically, the Commissioner argues that medical evidence showed Plaintiff's mental impairments were fairly well controlled; there is no evidence that Plaintiff received ongoing treatment by a mental health specialist; Plaintiff's testimony was less than credible because he alleged he performed few chores, but he lived alone and there is no evidence he

13



had any problems maintaining his residence; Plaintiff reported to Dr. DePace that he got together with friends weekly, and was able to perform all inside and outside chores (although he had to pace himself due to his physical problems); and Plaintiff applied for and received unemployment benefits until only weeks before the administrative hearing. The Commissioner argues that the ALJ did not inaccurately summarize Plaintiff's testimony. Additionally, the Commissioner argues that just because the ALJ did not explicitly discuss a specific area of testimony does not mean the ALJ did not consider it, the ALJ was not required to discuss every piece of evidence, and the ALJ explicitly stated he considered the entire record.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ's credibility determination does not appear to have considered the side effects of Plaintiff's pain medications. Although the ALJ noted that Plaintiff complained of the medication side



effect of nausea (Tr. 17), there is no indication that the ALJ considered this side effect or Plaintiff's alleged medication side effect of drowsiness in his credibility determination.[7]  See 20 C.F.R. § 404.1529(c)(3)(listing "other evidence" to be considered when "determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]").  This action should be remanded to the ALJ to fully evaluate Plaintiff's credibility in light of all of the evidence.

Because this case must be remanded to the Commissioner for the evaluation of the opinions of treating physician Dr. Gabr and to consider the side effects of Plaintiff's medications, the undersigned declines to specifically address Plaintiff's additional allegations concerning his credibility.  However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence and correct under controlling law.   This action is remanded to the Commissioner to evaluate the opinions of treating physician Dr. Gabr in light of all the evidence, consider the side effects of Plaintiff's medications, and consider Plaintiff's remaining allegations of error regarding his credibility.

---

[7] It is unclear whether the ALJ considered Plaintiff's alleged medication side effect of drowsiness.  On some medication lists, Plaintiff noted that Ativan caused him drowsiness (Tr. 154 166), but he stated in another report that he had no side effects from Ativan (Tr. 192).

15



It is, therefore, **ORDERED** that the Commissioner's decision is **reversed** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case is **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

December 27, 2012
Columbia, South Carolina